### T. P. NASH AND W. S. WHITE v. ELIZABETH CITY HOSPITAL COMPANY AND DR. JOHN SALIBA.

(Filed 22 September, 1920.)

**1. Sales—Auction—Suppressing Bids—Deeds and Conveyances—Fraud.**

The purpose and policy of a sale at public auction is to obtain the worth of the property by free and fair competition among the bidders, and where one, in violation of his principle and by agreement or words and conduct reasonably designed and calculated to effect the result, has succeeded in stifling competition and procuring the property at a lower price, he will not be allowed to hold his bargain, and the sale and deed predicated upon it will be set aside.

**2. Same—Corporations—Pleadings—Demurrer.**

The minority stockholders of a corporation, after demand on and refusal by the corporation to do so, brought action in behalf of themselves and other shareholders, etc., to set aside a deed made to a purchaser of the lands sold at public auction under allegation that the purchaser had joined with others in a movement to purchase the property for the use of a hospital for the benefit of the public, and had secured a person of high standing and integrity in the community to bid for them up to a certain price; that after reaching that price the defendant privately instructed the designated bidder to bid to a higher price, and thinking he was doing so for the defendant and his associates, he did so, and the property was

accordingly sold to him; that the defendant's associates, and those attending the sale, understood that the bidder was acting under the agreement until after the sale; that the property brought a grossly inadequate price, to the loss of the shareholders of the corporation: *Held*, sufficient to set aside the purchaser's deed, and a demurrer to the complaint was had.

**3. Fraud—Pleadings—Results—Ratification.**

When fraud is the subject-matter of a cause of action, it should be pleaded with sufficient fullness and detail to apprize the defendant of the matters he is called upon to answer; and where, in an action to set aside a deed made by a corporation to a purchaser at a sale at public auction of practically all of its property, the facts upon which the allegations of the principal fraud rests are sufficiently pleaded, and the suit has been properly instituted by the minority stockholders of the corporation, added allegations of the complaint showing the results of the principal fraud, and to repel a possible claim of ratification by the corporation, etc., are not required to be set forth in the same detail of averment.

CIVIL ACTION, heard on demurrer to the complaint, before *Bond, J.*, at August Term, 1920, of PASQUOTANK.

There was judgment overruling the demurrer, and defendant excepted and appealed.

*Thompson & Wilson for plaintiffs.*
*Meekins & McMullan for defendants.*

HOKE, J. The action is instituted by plaintiffs, two of the minority stockholders of defendant corporation in behalf of themselves and such other stockholders as may desire to make themselves parties, and after definite averment of demand and refusal on the part of the corporation to bring suit, the complaint in effect alleges: That the defendant corporation having offered its principal property for sale at public auction in Elizabeth City, the same was bid off by the codefendant, Dr. John Saliba, at $5,700, a grossly inadequate price, and a deed made to him by the company, which he now holds. The circumstances of the sale, the conduct of the defendants concerning it, and the effect upon the pecuniary rights of the parties are then set forth in the complaint as follows:

"That in the latter part of the year 1917 the defendant, Elizabeth City Hospital Company, having discontinued the operation of its hospital, desiring to sell the property described in the said deed, with the exception of a lot of coal, amounting to about forty tons, and two barrels of grain alcohol, the said sale to be subject to a certain deed of trust executed by said corporation to J. B. Leigh, trustee, on 1 October, 1914, and registered in the office of the register of deeds of Pasquotank County, in Book 39, on page 526, securing payment of a series of bonds

aggregating fifteen thousand dollars, and subject to the assumption of the payment of said bonds by the purchaser, and also certain indebtedness of the corporation then in litigation. The said corporation having advertised said property for sale on 20 December, 1917, there was a movement inaugurated by certain ¯public-spirited citizens of Elizabeth City and vicinity with whom the said Dr. John Saliba pretended to cooperate to establish˙a community hospital as a public charitable and eleemosynary institution for the benefit of the general public of the city and surrounding section. That as a part of said movement the said citizens employed the defendant, Dr. John Saliba, as a committee of one to secure the services of the Reverend Dr. B. C. Henning, a man highly respected and closely identified with all public and charitable movements, to attend said sale and bid on the said property for and on behalf of said community hospital for the public benefit, and as a charitable institution.

"5. That these plaintiffs are informed and believe that the said Dr. John Saliba did see Dr. B. C. Henning, and requested him to attend the sale and bid on the property for the community hospital, and gave him instructions as to the amount up to which he should bid. That the said Dr. Henning, having confidence in said Dr. John Saliba, and believing that he was acting for the benefit of a public enterprise, and not in the furtherance of˙his, Dr. Saliba's, own private interest, attended the sale and placed bids on the property for the benefit of the said community hospital, it being well known and generally understood by bidders, stockholders, and others attending said sale, and by the public at large, that the said Dr. Henning was bidding for the said purpose. That during the bidding, and when it had reached the limit, which the said Dr. John Saliba had set in his instructions to Dr. Henning, the said defendant, Dr. John Saliba, spoke to Dr. Henning private and secretly, and without the knowledge of the other bidders or bystanders or these plaintiffs, requested the said Dr. Henning to continue the bidding for the benefit of the said defendant Saliba individually. That no notice was given by said defendant or any one else that the said Dr. Saliba had procured Dr. Henning to bid for him, and not for the community hospital, or that the said Dr. Henning was no longer bidding for the said community hospital, but was bidding for the said Dr. John Saliba, and the persons present were left under the impression that he was still acting for and on behalf of said community hospital. That the said Dr. Henning innocently, and misunderstanding the effect of Dr. Saliba's request, continued to bid, and became the last and highest bidder for the said property ˙at the sum of $5,100. That it was not until after the bidding had stopped and the sale completed that it became known to the other bidders, bystanders, and others that the final bid of $5,100 had been

placed on said property for the benefit and advantage of the said Dr. John Saliba, and not of the said public and charitable community hospital; that by reason of this fact and the unlawful act on the part of the said Dr. John Saliba, in procuring Dr. Henning innocently to bid for him instead of for said charitable service for community hospital, and by reason of the fact that all bidders and others believed that Dr. Henning, who enjoyed the highest confidence and respect of the public, was still bidding for the said charitable purpose, the bidding was suppressed and chilled, and other persons deterred and wrongfully induced from bidding for said property a fair and just amount, the said bystanders believed that by bidding further they would impede, hamper, embarrass, and prevent the establishment of said charitable community hospital for the public benefit.

"6. That by reason of said wrongful act on the part of said Dr. John Saliba, in procuring said Dr. Henning to become the innocent instrument in obtaining the said property for him, because of the belief and understanding of those present that he was bidding for the charitable purpose aforesaid, the said defendant, Dr. John Saliba, obtained the property at a grossly inadequate sum, the real value of said equity of redemption being five or six times as much as he paid for it.

"7. That thereafter, and still pursuing his wrongful and inequitable designs, the said Dr. John Saliba wrongfully and inequitably procured the Elizabeth City Hospital Company to make and execute to him the deed for said property hereinbefore mentioned for said grossly inadequate and inequitable price of $5,100, and did further unlawfully and inequitably procure and induce the said corporation to include in said deed all the ground, buildings, and equipment of said hospital, without excepting the property hereinbefore mentioned, as excepted and without stipulating in said deed that the payment of the bonds secured by said deed of trust to J. B. Leigh, trustee, was assumed by the purchaser, thereby wrongfully and by inequitable conduct obtaining a conveyance of more property than had been offered for sale at the auction aforesaid.

"8. That these plaintiffs are informed and believe that the said Dr. John Saliba has never paid in full the purchase-money mentioned in said deed, nor the interest on the amount unpaid.

"9. That by reason of the wrongful, inequitable, and unlawful acts and doings of the defendants as aforesaid, the plaintiffs have been greatly damaged, and, if the said deed is allowed to stand, the value of their stock has been greatly diminished, and they are now offered by said corporation a mere 20 per cent of its par value in the liquidation of the affairs of said corporation, whereas the stock is and rightfully should be worth more than par." And the complaint asks judgment that the

deed be set aside returning to said Dr. Saliba this amount which he has paid on his bid, and for other relief, etc.

Upon these facts, admitted by the demurrer to be true, we concur with his Honor in the position that the demurrer should be overruled. ·

A sale at public auction is based upon the purpose and policy of obtaining the worth of property by free and fair competition among the bidders. As said by *Henderson, J.,* in *Smith v. Greenlee,* 13 N. C., 126-128: "A sale at auction is a sale to the best bidder, its object a fair price, and its means competition," and, accordingly, it has been uniformly held here and elsewhere that when one, in violation of the principle, and by agreement or words or conduct, reasonably designed and calculated to affect the result, has succeeded in stifling competition and procuring the property at a lower price, he will not be allowed to hold his bargain, and the sale. and the deed predicated upon it will be set aside. *Henderson and Snyder v. Polk,* 149 N. C., 104; *Davis v. Keen,* 142 N. C., 496; *Neely v. Torian,* 21 N. C., 410; *Smith v. Greenlee,* 13 N. C., 126; *Byers v. Fowler,* 12 Ark., 218; *Rees v. Branch,* 138 Ga., 150; *Martin v. Rawlet,* 5 Richardson Law, 541; *Hamilton v. Hamilton,* 2 Rich. Eq., 355; *Herndon v. Gibson,* 38 Syc., 357; 6 Corpus Juris, 830; *Rodgers v. Rodgers,* 13 Grant (N. Y.), 143; 2 R. C. L., 1131.

In the citation to Corpus Juris, the general principle applicable is stated as follows: "Generally it may be said that any act of the auctioneer or of the party selling, or of third parties as purchasers which prevents a fair, free, and open sale, or which diminishes competition or chills the sale, is contrary to public policy and vitiates the sale." And in *Rodgers v. Rodgers, supra,* a case very similar to the present, the sale was avoided where it was made to appear that on the sale of a father's property, a stranger, with a view and purpose of avoiding or lessening competition, had secretly employed the son to bid, and had thereby succeeded in obtaining the property at an under price. On the record, we are of opinion that the sale, in this instance, comes clearly within the condemnation of these authorities, and the wholesome principle they illustrate, and, if the facts are established, as alleged, that said sale should be set aside.

It is further insisted for the defendant Saliba that the allegations of section 7. of the complaint, that said defendant Saliba had, wrongfully and inequitably, procured the company to execute a deed to him of this property for a grossly inadequate price, and had "unlawfully and inequitably procured and induced the company to include in said deed a lot of detached property not offered for sale and without stipulating for a payment by purchaser of the bonded indebtedness, etc., are too indefinite and general to comply with the requirements of good pleading in such cases. It is undoubtedly true that when fraud is the subject-

matter of a cause of action, the general rule requires that the facts should be set forth with sufficient fullness and detail apprized that the charge of fraud stands revealed, and the defendant of what he will be called on to answer. *Mottu v. Davis,* 151 N. C., 237. But, on this record, the plaintiffs' cause is based upon the allegations of the complaint showing that the defendant has procured a deed for practically all of the company's property at a grossly inadequate price in violation of the principles established to insure fairness in the conduct of auction sales, accompanied by full and specific averment that the company itself had refused to institute suits for the proper protection of the owners. On these averments plaintiff's cause of action would seem to be sufficiently stated without the impeaching allegations of section 7, which are only made with a view of showing the results of the principal fraud, and to repel a possible claim of ratification which otherwise might arise on the record.

These allegations, therefore, are only an addenda to the principal cause of action, and more by way of forestalling a defense, and, in our opinion, are sufficiently full for this apparent purpose.

There is no error in overruling the demurrer, and the judgment to that effect is affirmed.

No error.