C. C. JENNINGS v. W. H. JENNINGS ET AL.

(Filed 14 September, 1921.)

1. **Public Sales—Increase of Bid—Suppression of Bidding—Tenants in Common.**

   Where tenants in common of lands sold for a division contract with a third person to raise the bid on the land in consideration that he is to receive a certain amount of the profits arising from an advanced price the lands should bring at the resale, their purpose was to increase and enhance the bids at the resale, and does not fall within the principle that contracts which stifle competition and chill bidding are void.

2. **Public Sales—By-bidders—Purchasers.**

   There is an implied guaranty that all bids at a public sale of lands are genuine, and where by-bidders thereat are obtained, the purchaser who acts promptly may be relieved of his bid.

3. **Same—Increase of Bids—Tenants in Common.**

   Where the plaintiff has entered into a valid agreement with tenants in common to raise the bid on the land sold for division, upon a mutual consideration arising from the contemplated profits of a resale: *Semble,* it is a violation of an implied guaranty that all bids at public sales should be genuine; but in this case, there being no fraud and the parties having

received a direct benefit from the contract, and there being no complaint from other bidders, it is assumed to be valid between them.

4. **Contracts—Breach—Performance—Evidence—Burden of Proof.**

A party to a contract must show performance on his part to recover from the other party under its provisions.

5. **Public Sales—Assignment of Bid—Contracts—Breach—Suppression of Bids—Tenants in Common.**

Where the plaintiff has entered into a valid agreement with the defendants, tenants in common, whereby, for mutual consideration, he has raised the bid at a sale of lands for division among tenants in common, he and the tenants in common to share the profits of a resale; and without the knowledge of the defendants assigns his bid for a personal consideration to a third person, who otherwise would have paid a greater price, the effect of his so assigning his bid would be a breach of his contract sued on, and a violation of the principle as to the suppression of bids at a public sale, which he will not be permitted to do.

APPEAL by defendants from *Allen, J.,* at February Term, 1921, of PASQUOTANK.

This is an action to recover an amount alleged to be due by contract in connection with a sale of certain lands in a partition proceeding.

The lands belonged to the wife of the defendant A. C. Bell and to a minor son of the defendant W. H. Jennings, in equal parts, and was sold for division in said proceeding on 11 October, 1919, R. G. Sawyer being the highest bidder in the sum of $10,250.

On 31 October, 1919, it being the last day on which an increased bid on said land could be made, the plaintiff and defendant entered into the following agreement:

I hereby agree with G. C. Jennings that if he will raise the bid of $10,250 made on the R. Nixon Morgan farm 10 per cent, making his bid $11,275, that in the event other *bona fide* bidders should run the price up to $12,050 to refund to him the $725 raise, so as to make the property cost him only $11,275; in consideration of getting him to raise the bid.

Should said *bona fide* bidders run the price above $12,050, and it is knocked off to a responsible bidder other than the said G. C. Jennings, then he, the said G. C. Jennings, is to have one-half of such raise above his bid of $11,275 when the sale is confirmed and the purchase money paid over in full.

Should a bidder run up the price on said G. C. Jennings to $13,000 or $13,050, and it is knocked off to the said G. C. Jennings, then he is only to pay $11,775 for the property.

　　　　　　　　　　　　(Signed)　　W. H. JENNINGS,
　　　　　　　　　　　　　　　　　　G. C. JENNINGS.

The plaintiff raised the bid as above stated and the agreement made on 31 October, 1919, Exhibit A, was abrogated and a new alleged agreement entered into between plaintiff and both defendants, reading as follows:

NOVEMBER 11, 1919.

Whereas, G. C. Jennings raised the bid on the R. Nixon Morgan farm from $10,250 to $11,275 on 31 October, 1919, and is now desirous of being protected in further bids for the property.

We hereby agree with him that he is to have one-half of the raised bids from his present bid of $11,275 up to $12,075, and one-third of the raise of bids from $12,075 up to the highest bid at the sale to be made at 12 o'clock noon on Monday, 17 November, 1919. The agreement made on 31 October, 1919, is hereby declared null and void insofar as it refers to the bidding.

This agreement is strictly a private memorandum, nonnegotiable, and is to be kept strictly confidential by all the signers hereto, so as to protect the said G. C. Jennings in his future bids at the sale.

(Signed)  W. H. JENNINGS,
A. C. BELL,
G. C. JENNINGS.

At the resale on 17 November, 1919, the plaintiff was the last and highest bidder at the price of $11,830, and he is now seeking to recover in this action under the last agreement one-half of the difference between the first bid by him of $11,275 and the last bid of $11,830, or $277.50.

Thereafter the plaintiff sold his bid to H. C. Ferrell for $650 without giving any information to the defendants of any offer to buy the bid or that the said Ferrell intended to increase the bid.

F. C. Ferrell testified: "I am the present owner of the property called the Nixon Morgan property, and mentioned in the papers which have been offered in evidence, having bought the bid made by plaintiff for the land. I was not present at the first sale. I wanted the property, and after the second sale employed a lawyer, Mr. P. G. Sawyer, to endeavor to purchase from G. C. Jennings, the bid he had offered at the second sale. Mr. Sawyer and I tried to buy the bid from him and finally I did buy it and got him to assign his bid to me by paying him $650 for it. I did not know he had any agreements with defendants about the matter. He did not tell me so. I had made arrangements to raise the bid, had arranged to get the money, and was able and prepared to do so. If he had not sold his bid I would have raised it, and told him I was going to do so."

P. G. Sawyer testified: "After the second sale, Mr. H. C. Ferrell employed me as attorney to try to buy Jennings' bid for him. We

arranged for Ferrell to get the money and he was able and prepared to buy. I saw the plaintiff and tried to buy his bid, and told him if he did not sell Mr. Ferrell was going to raise the bid on him. He sold to Ferrell."

The following issues were submitted to the jury:

"1. Are the defendants indebted to the plaintiff, and if so, in what sum? Answer: '$277.50.'

"2. Is the plaintiff indebted to the defendants, and if so, in what sum? Answer: 'Nothing.' "

His Honor instructed the jury that if they found the facts to be as testified by the witnesses they would answer the first issue "$277.50," and the second issue "Nothing," and the defendants excepted.

There was a judgment on the verdict in favor of the plaintiff, and the defendants appealed.

*Ehringhaus & Small for plaintiff.*
*Thompson & Wilson for defendant.*

ALLEN, J. The contract on which the action is founded is of doubtful wisdom and propriety.

It does not, however, fall under the principle that contracts which stifle competition and chill bidding, so that property may be bought for less than its true value, are void (*Nash v. Hospital Co.,* 180 N. C., 63), because the whole purpose and tendency of the contract was to increase and enhance the bids at the sale, but it is close akin to the employment of by-bidders, which is violative of the implied guaranty that all bids at public sales are genuine, and which may enable the purchaser, who acts promptly, to be relieved from his bid. 16 R. C. L., 71; Corpus Juris, 830 *et seq.*

No other bidder is, however, complaining, and, therefore, assuming the contract to be valid as between the parties, who have not been moved by any fraudulent purpose and have received direct benefits from the contract, there is still a view presented by the evidence which in our opinion ought to be submitted to a jury.

The contract was made for the purpose of securing the highest price for the land obtainable at a public sale, and the plaintiff was required to perform his obligations in good faith and would not be permitted to prevent a sale at which a higher sum would be bid, which is the very object the contract had in view, and then claim benefits under the contract.

He acquired the position of advantage as a bidder and the right to sell his bid under the contract, and he could not defeat the only purpose

which caused its execution and then seek to recover on it, as no principle is better settled than that a party suing upon a contract must show performance.

If the evidence of the defendant is to be believed, the plaintiff knew that if he did not sell his bid that there would be an increased bid on the property by one who was ready, able, and willing to pay the advanced bid, and that this would inure to the benefit of the defendants under the contract and instead of informing the defendants he made a private arrangement to sell his bid, and the sale was confirmed without knowledge on the part of the defendants of the agreement between the plaintiff and Ferrell.

There was therefore error in the peremptory instructions given to the jury, and there must be a

New trial.

NOTE. This opinion was written in accordance with the Court's decision and filed by order of Court, after *Justice Allen's* death.

14 September, 1921.                                        STACY, J.