ADAMS, Justice.
This is an appeal by the plaintiff from the judgment of the Circuit Court of Monroe County, confirming the sale of lands to the defendant, Merle Hanks Jewell, for the sum of $40,000.00.
Plaintiff filed a sale for division suit, seeking the partition or division of approximately 120 acres of farm land property in Monroe County. This land was originally owned by J. B. Hanks and his wife, Merle J. Hanks. J. B. Hanks died in 1965, without children or a will and was survived by his wife Merle J. Hanks (now Merle Hanks Jewell) and four brothers, one of whom is the plaintiff.
At the time of her husband’s death, Merle Hanks Jewell continued to own a one-half interest in the 120 acres of farm land. During this litigation, and after, she was living on the property used by her former husband and her as a homestead. Pursuant to Code 1975, § 35-6-100 et seq., she sought to purchase the interest of the plaintiff without the necessity of a public auction. The court appointed three commissioners to appraise the property. Mr. Earl Silcox submitted an appraisal of $100,000.00; Mr. Ralph Dawson, an appraisal of $45,000.00; and, Mr. Lee Duval, an appraisal of $72,-000.00. The average of these appraisals is $72,333.00. However, after receiving these three appraisals, and in response to a motion filed by plaintiff, claiming Code 1975, § 35-6-100, to be unconstitutional the Circuit Court declared the sections unworkable *30 and, therefore, unconstitutional and ordered that the land be sold at public outcry.[1]
At the public sale on September 23, 1980, Merle Hanks Jewell submitted the only bid and purchased the property at public outcry for $40,000.00. Plaintiff says that Merle Hanks Jewell was the only bidder because, “it was just circulated around there was nobody supposed to bid against Merle Jewell.” Plaintiff cites as evidence of this the fact that when Mrs. Jewell was awarded the property at public auction, “they clapped their hands and everybody seemed to be pleased that there was only one bid.” Plaintiff filed an objection to the sale and a motion to set it aside on the grounds that there was a tacit understanding that no one was to bid against Merle Hanks Jewell.
At the confirmation hearing, Mrs. Jewell introduced several witnesses as to the value of the property. Radford Ward testified that the property was worth $40,000.00 on the market. Ralph Manning testified that he valued the land at $46,000.00. Ralph Dawson valued the land at $45,000.00. Benny Shumate was of the opinion that $40,000.00 bid by Mrs. Jewell was a fair price. At the close of the hearing, the trial court suggested that it thought the fact that Mrs. Jewell had an undivided one-half interest in the property had a bearing on the amount of the bid.
The sole issue in this case is whether, considering all of the facts and circumstances presented at the confirmation hearing, including the testimony of the commissioners, the witnesses for the defendant Mrs. Jewell, and the statement made by the court, did the trier of fact err in confirming the sale of the property to Mrs. Jewell for $40,000.00? He did not. We, therefore, must affirm his judgment.
Plaintiff’s first argument that we should reverse the Court’s confirmation of the bid of Merle Hanks Jewell posits that there was a tacit understanding that no one was to bid against Merle Hanks Jewell. This argument is buttressed by the fact that people at the public auction applauded when the property was “knocked down” to Mrs. Jewell and seemed happy that she had gotten it. Additionally, the judge seemed to say that the facts of life indicate that nobody in this case would bid against Mrs. Jewell, a widow with an undivided one-half interest in the property. But, can we set aside an otherwise legally conducted sale because there are persons in the community reticent to bid in what has been described as a family situation? We think not. The court judicially knows that there are many persons who may be familiar with property that ordinarily would bid on it, but for the natural reluctance to become involved in family disputes. We simply cannot set aside such sales unless the bid offered was measurably inadequate.
In 7 Am.Jur.2d Auctions and Auctioneers § 24, p. 383 (1980) the following was said:
Competitive bidding is an essential element of an auction sale and such a sale should be conducted fairly and openly with full and free opportunity for competition from bidders. It is a policy of law that a fair price be received by the parties interested in the property sold and that this be not prevented by the stifling of competition among bidders.
Generally speaking, any conduct, artifice, agreement, or combination, the purpose and effect of which is to stifle fair competition and chill the bidding, is against public policy and will cause sale to be set aside.
Furthermore, in Nash v. Elizabeth City Hospital Co., 180 N.C. 59,104 S.E. 33 (1920), the North Carolina Supreme Court recognized that a public sale could be set aside where the purchaser bought the land for less than the value by bidding through another individual who those present and bidding understood was representing a charitable organization. They were deterred from offering what they thought was a true val *31 ue because of their desire not to interfere with property sought to be purchased for the public benefit. In the instant case, there is not a single piece of evidence of subterfuge on the part of the defendant. She presented herself at the auction as herself and made her bid and the persons present were apparently happy that she had received the property. This obviously falls short of the kind of active involvement in discouraging bids contemplated by the law stated in 7 Am.Jur.2d Auctions and Auctioneers § 24.
Plaintiff charged a “tacit conspiracy.” Webster’s New International Dictionary (unabridged) (2d ed. 1946), defines tacit as “unspoken; silent; wordless; noiseless; also, not speaking.” A conspiracy at law under the best of circumstances is difficult to prove. A tacit conspiracy would obviously be even more difficult to prove, although we are not saying that under no circumstances could a tacit conspiracy be proven. Nevertheless, under the facts of this case, we are constrained to hold that the plaintiff had the burden of proving such a conspiracy and he has not met his burden.
One common thread of law runs through this court’s decisions concerning the propriety of setting aside or reversing the trial court’s judgment in confirming a bid approved at a public auction. Mr. Justice Simpson spoke of it in Sieben v. Torrey, 252 Ala. 675, 676, 42 So.2d 621, 622 (1949), when he said:
On review here it is to be remembered that we do not weigh the evidence as regards its reasonably satisfying effect on- the issue tendered, but in considering it we indulge all favorable presumptions to sustain the trial court’s conclusion and will not disturb it unless palpably erroneous or manifestly unjust. Jennings v. Jennings, 250 Ala. 130(10), 33 So.2d 251; Cook v. Benton, 250 Ala. 259(3), 33 So.2d 877; Forest Hill Corp. v. Latter & Blum, 249 Ala. 23(6, 7), 29 So.2d 298.
In the case at bar, plaintiff offered three witnesses who were the commissioners appointed by the court to appraise the property. They brought three different figures to court, which averaged $72,333.00. However, one of the appraisers offered a figure of $45,000.00, not much different from the price of $40,000.00 offered by the defendant and approved by the court. On the other hand, the defendant offered appraisals of $40,000.00 to $45,000.00, $40,-000.00, $46,000.00, $45,000.00 and $40,000.00. Plaintiff argues that defendant’s witnesses were not experts. the
However, in Alabama, it is not necessary to be an expert to testify as to the adequacy of a real estate price. Sanford v. Sanford, 355 So.2d 365 (Ala.1978); Adler & Co. v. Pruitt, 169 Ala. 213, 53 So. 315 (1910). On the other hand, defendant questions seriously the reliability of plaintiff’s so-called experts. Defendant urges that plaintiff’s experts did not take into proper consideration the increase in interest rates from time of appraisal to time of sale. Nor did they take in consideration the value of some parts of the 120 acres against the value of other parts. Once again, we get back into the thicket of what the trial court is uniquely able to perform, namely, to judge the reliability and credibility of witnesses. There was abundant evidence upon which he could find that the bid of $40,-000.00 was measurably adequate. We are clear to the conclusion that he certainly acted within the bounds of his discretion and in so doing, his judgment is due to be affirmed.
AFFIRMED.
TORBERT, C. J., and FAULKNER, AL-MON and EMBRY, JJ., concur.

. Plaintiff did not and could not appeal the trial court’s ruling as to the unconstitutionality of § 35-6-100 because the ruling was made at his request. This court, on June 5, 1981, ruled the section to be constitutional. Madison v. Lambert, 399 So.2d 840 (Ala.1981).