GOVERNOR'S CLUB, INC., A North Carolina non-profit corporation, AND ROBERT L. ALPERT, on behalf of himself and all other similarly situated members of GOVERNORS CLUB, INC., Plaintiffs v. GOVERNORS CLUB LIMITED PARTNERSHIP, A Delaware limited partnership, GOVERNORS CLUB DEVELOPMENT CORPORATION, A North Carolina Corporation, ESTATE OF TRUBY J. PROCTOR, JR., AND KIRK J. BRADLEY, Defendants

No. COA01-394

(Filed 20 August 2002)

## 1. Fiduciary Relationship; Fraud; Unfair Trade Practices— breach of fiduciary duty—constructive fraud—motion to dismiss—sufficiency of evidence

The trial court erred by granting defendants' motions under N.C.G.S. § 1A-1, Rules 12(b)(6) and 12(c) regarding plaintiff club's claim for breach of fiduciary duty and constructive fraud against the individual defendants, and its claim for unfair and deceptive trade practices against all defendants arising out of the defective construction of the pertinent facilities that were allegedly not discoverable prior to the closing even though the parties signed an agreement containing provisions that would limit defendants' liability after title was conveyed to the club, because: (1) in regard to the breach of fiduciary duty and constructive fraud claims, plaintiff adequately alleged that the individual defendants owed it a fiduciary duty by stating that each defendant was at all relevant times a principal owner, a director, and an officer of both defendant corporation and plaintiff club, and that defendants collectively and/or individually misrepresented the contents of accepting a memorandum including the agreement; and (2) allegations sufficient to allege constructive fraud are sufficient to allege unfair and deceptive trade practices, and plaintiff adequately alleged that defendants' actions were unfair or deceptive, and that those actions proximately caused actual injury to plaintiff.

## 2. Contracts— breach—motion to dismiss—sufficiency of evidence

The trial court erred by granting defendants' motions under N.C.G.S. § 1A-1, Rules 12(b)(6) and 12(c) regarding plaintiff club's claim for breach of contract against defendant development corporation and defendant partnership for failing to construct an 18-hole golf course of championship quality and for failing to construct a clubhouse with an HVAC system appropriate to

the size and uses of the clubhouse, because while the parties' agreement contained a comprehensive disclaimer of warranties provision whereby the club purported to accept the facilities including the golf course and the clubhouse in an "as is" condition, plaintiff alleges additional claims to the effect that such disclaimers were obtained from the club illegitimately.

**3. Contracts— breach of implied covenant of good faith and fair dealing—motion to dismiss—sufficiency of evidence**

The trial court erred by granting defendants' motions under N.C.G.S. § 1A-1, Rules 12(b)(6) and 12(c) regarding plaintiff club's claim for breach of implied covenant of good faith and fair dealing, because plaintiff's complaint sufficiently alleged that defendant partnership and defendant development corporation breached their implied duty of good faith and fair dealing in connection with the parties' agreement, amendment, and sale of the pertinent facilities to the club.

Judge TYSON concurring in part and dissenting in part.

Appeal by plaintiff Governors Club, Inc., from order entered 4 October 2000 by Judge Raymond A. Warren in Superior Court, Chatham County. Heard in the Court of Appeals 13 February 2002.

*Womble Carlyle Sandridge & Rice, PLLC, by Burley B. Mitchell, Jr. and Charles L. Becker, for plaintiff-appellant Governors Club, Inc.*

*McCoy, Weaver, Wiggins, Cleveland & Raper, P.L.L.C., by John E. Raper, Jr., for defendants-appellees Governors Club Limited Partnership and Governors Club Development Corporation.*

*Smith Helms Mulliss & Moore, L.L.P., by James G. Exum, Jr., and Gary R. Govert, for defendant-appellee Estate of Truby G. Proctor, Jr.*

*Boyce & Isley, P.L.L.C., by G. Eugene Boyce, for defendant-appellee Kirk J. Bradley.*

WYNN, Judge.

Plaintiff Governors Club, Inc. (the "Club") appeals from a 4 October 2000 trial court order dismissing its complaint on all issues against Governors Club Limited Partnership (the "Partnership"), Governors Club Development Corporation (the "Development

Corporation") (the Partnership and the Development Corporation are hereinafter referred to collectively as the "Developer"), Estate of Truby J. Proctor, Jr. ("Proctor"), and Kirk J. Bradley ("Bradley") (the Partnership, the Development Corporation, Proctor and Bradley are hereinafter referred to collectively as the "defendants"). Plaintiff Robert L. Alpert is not a party to this appeal. Following careful review, we reverse the trial court's 4 October 2000 order.

The Club and the Development Corporation are both North Carolina corporations. On 27 June 1989, the Club and the Development Corporation entered into a Facilities Purchase Agreement ("Agreement"). At the time, Bradley was the President of both the Club and the Development Corporation, and signed the Agreement on behalf of both entities. The Agreement provided for the Development Corporation's construction of an "eighteen (18) hole championship golf course designed by Jack Nicklaus," as well as a clubhouse, putting and chipping greens, a driving range, tennis courts and pool (collectively the "Facilities"). The Agreement further provided for the eventual sale of the Facilities to the Club no later than 1 January 1997, at which time the Club would purchase the Facilities and acquire the control and management thereof. Prior to closing, the Development Corporation would operate the Facilities.

In addition, the Agreement provided for the future creation of a six-member Advisory Committee, selected annually by the Development Corporation, to serve as a liaison between the Development Corporation and the Club members; the Advisory Committee was to have "no right, duty or obligation to act on behalf of the [Club] members" until closing. The Development Corporation agreed to select twelve Advisory Committee members immediately prior to closing, who would become the Club's Board of Directors upon closing. The Agreement also contained several provisions that would limit the Development Corporation's liability after title was conveyed to the Club. The Development Corporation later assigned the Agreement to the Partnership; at the time of the assignment, the Development Corporation was the Partnership's general partner.

Prior to closing, the Club and the Partnership amended the Agreement (the "Amendment") on 23 December 1996; Bradley signed the Amendment on behalf of both the Club (as its President) and the Partnership (as the President of its general partner, the Development Corporation). The Amendment altered various terms of the Agreement, such as (1) requiring the Developer to furnish a Closing Certificate to the Club at closing making certain representations; (2)

requiring the then-sitting Advisory Committee to select independent legal counsel, at least thirty days prior to closing, to represent the Club in connection with the transactions contemplated within the Agreement, (3) requiring the Developer to select sixteen Advisory Committee members immediately prior to closing to become the Club's Board of Directors upon closing, and (4) setting a closing date of 1 January 1997. The Amendment recited that the amendments therein had been approved by a majority of the Club's members, and stated that "[e]xcept as specifically amended by this Amendment, the Agreement is hereby restated in full."

Closing of the contemplated transaction did in fact take place on 1 January 1997, at which time the Partnership furnished the required Closing Certificate to the Club, containing the required representations and warranties. However, plaintiff later brought this action, alleging that the Club and its members subsequently discovered numerous "latent defects in and problems with the [] Facilities that were not apparent or reasonably discoverable before the closing." Plaintiff detailed extensive defects in the golf course, wastewater holding ponds, and the clubhouse, and alleged that "neither the Agreement nor the Amendment nor the representations and warranties in the Closing Certificate were the result of an 'arm's length' bargaining between independent parties." Instead, "the Agreement and the Amendment were in reality agreements by the Developer with itself," whereby Defendants intended that the Club members would bear ultimate responsibility, financial and otherwise, for the Facilities. Plaintiff pointed out various disclaimers throughout the Agreement whereby the Developer sought to exonerate itself from any responsibility for the Facilities that it constructed, and exclusively cared for and controlled until the closing date.

The complaint further asserted that the Club members had no rights whatsoever under the Agreement, and were not intended third-party beneficiaries thereof. Additionally, the complaint alleged that the Club's Board of Directors prior to closing, as well as the "new" Board of Directors that took office at closing (comprised of the sixteen-member Advisory Committee selected by the Developer), were "hand-picked" by the Developer. The "independent legal counsel" selected by the Club's "new" Board of Directors to represent the Club in connection with the transfer at closing was alleged to be a long-time friend of defendant Bradley, suggested by Bradley to the Board. Plaintiff alleged that said "independent" counsel actually began providing counsel to the incoming Board of Directors on or about June

1996. Accordingly, plaintiff asserted claims for (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) reformation of contract, (4) fraudulent misrepresentation, (5) negligent misrepresentation, (6) breach of fiduciary duty, (7) constructive fraud, and (8) unfair and deceptive trade practices.

The Partnership and the Development Corporation answered separately, each asserting a N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) (1999) motion to dismiss plaintiff's complaint for failure to state a claim upon which relief can be granted. Both the Partnership and the Development Corporation also alleged that (1) upon information and belief, the Club members voted on and approved the Amendment in writing; (2) sometime between 1 January 1995 and 1 January 1997, all Club members were provided with a Governor's Club, Inc. Membership Offering Memorandum (the "Memorandum") containing a copy of the Agreement; (3) upon information and belief, sometime between 1 January 1995 and 1 January 1997, all Club members accepted the terms of Club membership set forth in the Memorandum, including an Acknowledgment Agreement specifically including an agreement by all Club members to be bound by the terms and conditions of the Agreement; (4) plaintiff "voluntarily assumed the risk of damage allegedly resulting from the purchase [of the Facilities] and [is] barred from recovery by an affirmative and voluntary assumption of known risks which were fully appreciated"; and (5) plaintiff waived its right to bring the claims in the complaint by ratifying all applicable agreements, wherein the Developer disclaimed all warranties and responsibilities relating to the alleged defects.

The Partnership and the Development Corporation each also asserted a counterclaim alleging that all Club members accepted the terms of Club membership as set forth in the Memorandum, as evidenced by the members' execution of the Acknowledgment Agreement whereby they agreed to be bound by the terms and conditions of the Agreement. The counterclaim alleged that, upon information and belief, the Amendment and its execution were voted upon and approved by the Club members in writing prior to the Amendment's execution. The counterclaim alleged further that the Memorandum refers to the "Disclaimer of Warranties" section of the Agreement, and specifically alerts the reader to the "substantial risks" to the Club and its members as a result thereof. The Partnership and the Development Corporation each pled plaintiff's alleged written acknowledgment and acceptance of the terms of the

**GOVERNOR'S CLUB, INC. v. GOVERNOR'S CLUB LTD. P'SHIP**

[152 N.C. App. 240 (2002)]

Agreement and the Amendment in bar to plaintiff's claims of fraud, and sought recovery from plaintiff for costs and expenses incurred in defending plaintiff's lawsuit.

In replying to the counterclaims of the Partnership and the Development Corporation, plaintiff asserted that "defendants collectively and/or individually misrepresented the contents and/or the effect of accepting the [] Memorandum, including the Agreement." Additionally, plaintiff asserted that:

> several documents, including the Amendment, were submitted to then Club members for their approval by vote; that the defendants collectively and/or individually misrepresented the contents of said documents and/or the effect of accepting said documents; that a majority of the then Club members voted in favor of the documents submitted for their approval by vote[.]

Plaintiff also asserted an affirmative defense to the counterclaims, stating:

> defendants collectively and/or individually intentionally or negligently misrepresented the contents of and/or the effect of accepting the [] Memorandum, including without limitation the Agreement and the Amendment, and accordingly, plaintiff[] plead[s] fraud as an affirmative defense to any and all of defendants' counterclaims.

Plaintiff also admits, as to the contents of the Memorandum, that it "is a written document that speaks for itself and is the best evidence of its contents." We note that the Memorandum is not a part of the record before this Court.

In granting defendants' Rule 12(b)(6) motions to dismiss, the trial court stated that it "considered the pleadings, motions, briefs and arguments of counsel." We must first determine whether, in doing so, the trial court converted defendants' Rule 12(b)(6) motions to dismiss into N.C. Gen. Stat. § 1A-1, Rule 56 (2001) motions for summary judgment or N.C. Gen. Stat. § 12(c) (2001) motions for judgment on the pleadings.

Ordinarily, if, on a Rule 12(b)(6) motion, the trial court considers matters outside the pleading, "the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56[.]" N.C. Gen. Stat. § 1A-1, Rule 12(b); *see Industries, Inc. v. Construction Co.*, 42 N.C. App. 259, 262-63, 257 S.E.2d 50, 53, *disc. review denied,*

298 N.C. 296, 259 S.E.2d 301 (1979) ("when outside matter is presented to and not excluded by the court on a motion under . . . Rule 12(b)(6) . . . , it should be treated as one for summary judgment under Rule 56"). However, where, as here, the matters outside the pleading considered by the trial court consist only of briefs and arguments of counsel, the trial court need not "convert the Rule 12 motion into one for summary judgment under Rule 56[.]" *Privette v. University of North Carolina*, 96 N.C. App. 124, 132, 385 S.E.2d 185, 189 (1989).

While the trial court did not treat defendants' motions as Rule 56 motions for summary judgment, it is less clear from the trial court's 4 October 2000 order whether it treated defendants' motions as Rule 12(c) motions for judgment on the pleadings. The trial court purported to rule on defendants' motions as Rule 12(b)(6) motions to dismiss; however, prior to ruling on the motions, the trial court permitted plaintiff additional time to reply to the Developer's counterclaims, and stated in its order that it "considered the *pleadings*, motions, briefs and arguments of counsel," thereby indicating that it considered all of the pleadings and treated defendants' motions as Rule 12(c) motions. In either case, after reviewing plaintiff's claims and the appropriate supporting documentation under both Rules 12(b)(6) and 12(c), we conclude that the trial court erred in granting defendants' motions, and reverse the trial court's order.

In reviewing a Rule 12(b)(6) motion to dismiss,

> the factual allegations in plaintiff's complaint are treated as true. "A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint by presenting 'the question whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief can be granted under some [recognized] legal theory." A motion to dismiss pursuant to Rule 12(b)(6) should not be granted " *'unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim.'* "

*Isenhour v. Hutto*, 350 N.C. 601, 604-05, 517 S.E.2d 121, 124 (1999) (internal citations omitted). Under Rule 12(b)(6), we must therefore consider plaintiff's complaint to determine whether, when liberally construed (*see Dixon v. Stuart*, 85 N.C. App. 338, 354 S.E.2d 757 (1987)), it states enough to give the substantive elements of a legally recognized claim. *See Booher v. Frue*, 86 N.C. App. 390, 358 S.E.2d 127 (1987).

GOVERNOR'S CLUB, INC. v. GOVERNOR'S CLUB LTD. P'SHIP

[152 N.C. App. 240 (2002)]

A Rule 12(c) motion for judgment on the pleadings is not favored by the law, *see Huss v. Huss,* 31 N.C. App. 463, 230 S.E.2d 159 (1976), and requires the trial court to view all facts and permissible inferences in the light most favorable to the nonmoving party. *See DeTorre v. Shell Oil Co.,* 84 N.C. App. 501, 353 S.E.2d 269 (1987). All factual allegations in the nonmovant's pleadings are deemed admitted except those that are legally impossible or not admissible in evidence. *See Cheape v. Town of Chapel Hill,* 320 N.C. 549, 359 S.E.2d 792 (1987).

Plaintiff concedes in its brief that the trial court properly dismissed its following claims: (1) Breach of contract, as against defendants Proctor and Bradley; (2) Breach of implied covenant of good faith and fair dealing, as against defendants Proctor and Bradley; (3) Reformation of contract, as against all defendants; (4) Fraudulent misrepresentation, as against all defendants; (5) Negligent misrepresentation, as against all defendants; (6) Breach of fiduciary duty, as against defendants Development Corporation and Partnership; and (7) Constructive fraud, as against defendants Development Corporation and Partnership. Plaintiff's remaining claims are: (1) Breach of contract, as against defendants Development Corporation and Partnership; (2) Breach of implied covenant of good faith and fair dealing, as against defendants Development Corporation and Partnership; (3) Breach of fiduciary duty, as against defendants Proctor and Bradley; (4) Constructive fraud, as against defendants Proctor and Bradley; and (5) Unfair and deceptive trade practices, as against all defendants.

---

## I. Breach of Fiduciary Duty, Constructive Fraud, and Unfair and Deceptive Trade Practices

**[1]** Plaintiff first contends that the trial court erred in dismissing its claims for breach of fiduciary duty and constructive fraud as against defendants Proctor and Bradley. We agree.

A claim for breach of fiduciary duty requires the existence of a fiduciary duty. In its complaint, plaintiff asserted that Truby J. Proctor, Jr. and Bradley each was formerly (at all relevant times) "a principal owner, a director, and an officer of both the [Development] Corporation and the Club." The complaint also stated that, on information and belief, (1) Proctor "continues to be a principal owner of the [Development] Corporation," (2) Bradley "continues to be a principal owner, a director, and an officer of the [Development]

Corporation, and (3) Bradley also "continues to be a director of the Club."

> Under North Carolina law, directors of a corporation generally owe a fiduciary duty *to the corporation*, and where it is alleged that directors have breached this duty, the action is properly maintained *by the corporation* rather than any individual creditor or stockholder. *Underwood v. Stafford*, 270 N.C. 700, 703, 155 S.E.2d 211, 213 (1967).

*Keener Lumber Co., Inc. v. Perry*, 149 N.C. App. 19, 560 S.E.2d 817, 822 (2002); *see also* N.C. Gen. Stat. § 55-8-30 (2001). Plaintiff thus adequately alleged that defendants Proctor and Bradley owed it a fiduciary duty.

Furthermore, G.S. § 55-8-30 requires a corporate director to discharge his or her duties as a director:

> (1) In good faith;

> (2) With the care an ordinarily prudent person in a like position would exercise under similar circumstances; and

> (3) In a manner he reasonably believes to be in the best interests of the corporation.

G.S. §§ 55-8-30(a)(1)-(3). Having determined that defendants Proctor and Bradley, as principal owners, directors, and officers of the Club, owed it a fiduciary duty, we review the complaint as well as the additional pleadings to determine whether plaintiff sufficiently alleged a breach of that duty.

Plaintiff asserted in the complaint that "12. . . . neither the Agreement nor the Amendment nor the representations and warranties in the Closing Certificate were the result of 'arm's length' bargaining between independent parties"; "14. . . . the Agreement and the Amendment were in reality agreements by the Developer with itself"; the Developer purported to disclaim any fiduciary duty on behalf of the Club or its members; the Club's Board of Directors, which took office at closing, was hand-picked by the Developer; the "independent legal counsel" selected to represent the Club in the transaction was a long-time friend of defendant Bradley, and was selected by the Developer's hand-picked directors; the provision allowing the Club's Board of Directors to select the Club's "independent legal counsel" was a "sham"; the Developer constructed the Facilities with numer-

ous defects, many of which were latent, not apparent or reasonably discoverable prior to closing, and were in fact not discovered by Club members until after closing; the Club's Facilities were not properly constructed nor properly maintained prior to closing; defendants knew or reasonably should have known of the Facilities' defects, and failed to disclose them to the Club or its members; the presence of the defects was not known to or reasonably discoverable by the Club or its members; "60. Defendants stood in a relationship of special faith, confidence, and trust with respect to" plaintiff as the Club's officers and directors, and had exclusive control over the design, construction, operation and maintenance of the Facilities prior to closing; "61. . . . defendants owed plaintiff[] a fiduciary duty" and their acts and omissions breached said duty; and as a result of said breach, plaintiff suffered damages.

If we consider not only the complaint but all of the pleadings, plaintiff alleges in its reply to the Developer's counterclaims "that the defendants collectively and/or individually misrepresented the contents of and/or the effect of accepting the [] Memorandum, including the Agreement." Plaintiff also stated therein:

> that the defendants collectively and/or individually intentionally or negligently misrepresented the contents of and/or the effect of accepting the [] Memorandum, including without limitation the Agreement and the Amendment, and accordingly, plaintiff[] plead[s] *fraud* as an affirmative defense to any and all of defendants' counterclaims.

(Emphasis added.)

Having considered this evidence, we conclude that the complaint sufficiently stated a claim for breach of fiduciary duty against defendants Proctor and Bradley to survive a Rule 12(b)(6) motion to dismiss. Similarly, the pleadings as a whole are sufficient to survive a Rule 12(c) motion for judgment on the pleadings on this claim.

A constructive fraud claim requires proof of circumstances:

> " '(1) which created the relation of trust and confidence [the "fiduciary" relationship], and (2) [which] led up to and surrounded the consummation of the transaction in which defendant is alleged to have taken advantage of his position of trust to the hurt of plaintiff.' " *Terry v. Terry*, 302 N.C. 77, 83, 273 S.E.2d 674, 677 (1981) (citation omitted). Put simply, a plaintiff must

show (1) the existence of a fiduciary duty, and (2) a breach of that duty.

*Keener Lumber Co., Inc.*, 149 N.C. App. at 28, 560 S.E.2d at 824. Having determined that the trial court erred in granting defendants' Rule 12(b)(6) motions to dismiss plaintiff's breach of fiduciary duty claim, we likewise conclude that the trial court erred in dismissing plaintiff's constructive fraud claim as against defendants Proctor and Bradley.

Furthermore, allegations sufficient to allege constructive fraud are likewise sufficient to allege unfair and deceptive trade practices. *See HAJMM Co. v. House of Raeford Farms*, 94 N.C. App. 1, 14, 379 S.E.2d 868, 876 (1989), *modified and aff'd in part, rev'd in part on other grounds*, 328 N.C. 578, 403 S.E.2d 483 (1991). To establish a claim for unfair or deceptive trade practices under N.C. Gen. Stat. § 75-1.1 (2001), a plaintiff must show (1) defendant engaged in an unfair or deceptive practice or act, (2) "in or affecting commerce," and (3) such act proximately caused actual injury to the plaintiff. G.S. § 75-1.1; *see Pleasant Valley Promenade v. Lechmere, Inc.*, 120 N.C. App. 650, 464 S.E.2d 47 (1995). The business of buying, developing and selling real estate is an activity "in or affecting commerce" for the purposes of G.S. § 75-1.1. *See Wilder v. Squires*, 68 N.C. App. 310, 315 S.E.2d 63, 311 N.C. 769, 321 S.E.2d 158, *disc. review denied*, 311 N.C. 769, 321 S.E.2d 158 (1984); *see also Wilder v. Hodges*, 80 N.C. App. 333, 342 S.E.2d 57 (1986); *Adams v. Moore*, 96 N.C. App. 359, 385 S.E.2d 799 (1989), *disc. review denied*, 326 N.C. 46, 389 S.E.2d 83 (1990). Plaintiff adequately alleged that Proctor's and Bradley's actions were unfair or deceptive, and that those actions proximately caused actual injury to plaintiff. Thus, the complaint was sufficient to survive defendants' motions on the claim of unfair and deceptive trade practices as against defendants Proctor and Bradley.

Additionally, we note that the actions of the Partnership, as a party to the Agreement, and the Development Corporation, as a party to the Agreement and the Amendment (as general partner of the Partnership), fall within the ambit of G.S. § 75-1.1. *See, e.g., Opsahl v. Pinehurst Inc.*, 81 N.C. App. 56, 344 S.E.2d 68 (1986). The complaint alleges that the actions of the Partnership and the Development Corporation were unfair or deceptive, and caused plaintiff actual injury. As such, the trial court erred in granting defendants' motions to dismiss these claims as against the Partnership and the Development Corporation.

## II. Breach of Contract

[2] In addition to its claims that defendants Proctor and Bradley breached their fiduciary duty to plaintiff and engaged in constructive fraud, and that all defendants engaged in unfair and deceptive trade practices, plaintiff asserts in its complaint and in its brief that the Development Corporation and the Partnership breached the contract (1) "by failing to construct an 18-hole golf course of championship quality," and (2) "by failing to construct a clubhouse with an HVAC system appropriate to the size and uses of the clubhouse."

In the Agreement, the Development Corporation contracted to construct "[a]n eighteen (18) hole championship golf course designed by Jack Nicklaus" and a golf clubhouse as part of the Facilities. The complaint alleged that the golf course was neither properly constructed nor properly maintained prior to closing, such that the course failed to meet United States Golf Association standards. Plaintiff alleged that neither the fairways nor the greens drained properly. Additionally, plaintiff alleged various defects in the clubhouse, including a woefully inadequate heating, ventilating and air conditioning system.

While the Agreement also contained a comprehensive "Disclaimer of Warranties" provision, whereby the Club purported to accept the Facilities (including the golf course and the clubhouse) in a "where is, as is" condition, plaintiff alleges additional claims to the effect that such disclaimers were obtained from the Club illegitimately. Indeed, defendant Bradley signed the Agreement on behalf of the Club as well as the Development Corporation, allegedly breaching his fiduciary duty to the Club and engaging in constructive fraud as well as unfair and deceptive trade practices. Under the circumstances, we conclude that the complaint was sufficient to survive defendants' motions on plaintiff's breach of contract claims against the Partnership and the Development Corporation.

## III. Breach of Implied Covenant of Good Faith and Fair Dealing

[3] As recognized by our Supreme Court, " 'In every contract there is an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement.' " *Bicycle Transit Authority v. Bell*, 314 N.C. 219, 228, 333 S.E.2d 299, 305 (1985) (citation omitted). Plaintiff's complaint alleged that the Partnership and the Development Corporation "breached their [implied] duty of good faith and fair deal-

ing in their dealings with plaintiff[] in connection with the Agreement, the Amendment, and the sale of the [] Facilities to the Club." The complaint contained sufficient allegations to support this claim to survive defendants' motions, such that the trial court erred in granting the motions to dismiss this claim as against the Partnership and the Development Corporation.

---

In summation, after carefully reviewing the complaint, we hold that when all of the allegations therein are liberally construed and assumed to be true, the complaint sufficiently alleges adequate facts to survive a Rule 12(b)(6) motion to dismiss. Furthermore, all of the pleadings considered *in toto* (when all of the facts and permissible inferences therein are viewed in the light most favorable to plaintiff) are sufficient to survive a Rule 12(c) motion for judgment on the pleadings. Accordingly, we conclude that the trial court erred in dismissing plaintiff's claims as detailed above. The trial court's 4 October 2000 order is therefore,

Reversed.

Judge TIMMONS-GOODSON concurs.

Judge TYSON dissents.

TYSON, Judge concurring in part and dissenting in part.

I concur with the majority's opinion that the trial court correctly dismissed (1) all claims of Robert L. Alpert, (2) Governors Club Inc.'s ("Club") claims against defendants Kirk J. Bradley ("Bradley") and the Estate of Truby J. Proctor ("Proctor") for breach of contract and breach of implied covenant of good faith and fair dealing, (3) the Club's claims against Governors Club Limited Partnership ("Partnership") and Governors Club Development Corporation ("Development Corporation" Partnership and Development Corporation collectively "Developer" Bradley, Proctor, and Developer collectively "defendants") for breach of fiduciary duty, and (4) the Club's claims against all defendants for fraudulent and negligent misrepresentation. Plaintiff conceded in its brief and again during oral argument that the trial court properly dismissed these claims.

I respectfully dissent from the majority's holding that the trial court erred by dismissing the Club's claims for: (1) breach of contract, breach of implied warranty of good faith and fair dealing, and

unfair and deceptive trade practices against Developer, and (2) breach of fiduciary duty, constructive fraud, and unfair and deceptive trade practices against defendants Bradley and Proctor. I would affirm the decision of the trial court.

The majority's opinion analyzes the remainder of the trial court's order under both Rule 12(b)(6) and Rule 12(c). Under either standard of review, the trial court did not err.

## I.  Standard of Review

### A.  Rule 12(b)(6)

On a motion to dismiss pursuant to Rule 12(b)(6), the court must determine "whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory . . . ." *Harris v. NCNB*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987) (citation omitted). "The test on a motion to dismiss for failure to state a claim upon which relief can be granted is whether the pleading is legally sufficient." *State of Tennessee v. Environmental Mgt. Comm'n*, 78 N.C. App. 763, 765, 338 S.E.2d 781, 782 (1986) (citing *Leasing Corp. v. Miller*, 45 N.C. App. 400, 263 S.E.2d 313, *disc. rev. denied*, 300 N.C. 374, 267 S.E.2d 685 (1980)). Legal insufficiency may be due to: (1) the complaint on its face reveals that no law supports a plaintiff's claim, (2) the complaint on its face reveals the absence of facts sufficient to make a good claim, or (3) the complaint discloses some fact that necessarily defeats a plaintiff's claim. *Oates v. JAG, Inc.*, 314 N.C. 276, 278, 333 S.E.2d 222, 224 (1985); *Environmental Mgt. Comm'n*, 78 N.C. App. at 765, 338 S.E.2d at 782. A claim should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Garvin v. City of Fayetteville*, 102 N.C. App. 121, 123, 401 S.E.2d 133, 135 (1991); *Sutton v. Duke*, 277 N.C. 94, 102, 176 S.E.2d 161, 167 (1970).

A Rule 12(b)(6) motion to dismiss is the modern equivalent of a demurrer. *Sutton*, 277 N.C. 94, 176 S.E.2d 161 (1970). In *Sherrill v. Western Union Tel. Co.*, 109 N.C. 527, 14 S.E. 94, 95 (1891) a plaintiff attached a copy of a telegraph message to his complaint. The deleterious message attached to the complaint became part of the complaint and created a bar to recovery. *See also Snug Harbor Property Owners Ass'n v. Curran*, 55 N.C. App. 199, 284 S.E.2d 752 (1981) (the trial court had properly considered exhibits, which consisted of

seven documents, that were attached to and incorporated into plaintiff's complaint prior to ruling on the defendants' motions to dismiss).

## B. Rule 10(c)

Rule 10(c) of the North Carolina Rules of Civil Procedure provides in part that "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." N.C. Gen. Stat. § 1A-10(c) (2001). A complaint that attached and incorporated by reference a federal court complaint as an exhibit, and considered by the trial court, was not a matter outside of the pleadings to convert a Rule 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment. Rule 10(c) provides that such an exhibit is part of the complaint for all purposes. *Stanback v. Stanback*, 297 N.C. 181, 254 S.E.2d 611, *rev. in part on other grounds*, 297 N.C. 181, 254 S.E.2d 611 (1979).

When the Club attached numerous exhibits to its complaint, those exhibits were adopted by the Club and are properly considered as part and parcel of the complaint. The disclosure of facts in the Club's exhibits were properly considered by the trial court and supports dismissal of the Club's complaint under Rule 12(b)(6).

Under Rule 12(c), the trial court properly considered all pleadings, including defendants' answers, exhibits attached thereto, and defendants' counterclaim, and the Club's reply to it. N.C. Gen. Stat. § 1A-1, Rule 12(c) (2001). Nothing contained in the defendants' answer, exhibits, and counterclaim, or the Club's reply to defendants' counterclaim saves the Club's claims under a Rule 12(c) analysis. The trial court correctly dismissed all of the Club's claims.

## II. The Club's Claims Against Defendants Bradley and Proctor

I do not agree with the majority's opinion that the Club has sufficiently pled the elements of breach of fiduciary duty, constructive fraud, and unfair and deceptive trade practices claims against Bradley and Proctor for two reasons: (1) the Club makes no factual allegations sufficient to constitute claims for breach of fiduciary duty, constructive fraud, or unfair and deceptive trade practices against Bradley and Proctor, and (2) when all of the allegations in the complaint, and the facts contained in the exhibits attached thereto, are considered as true, a set of facts is disclosed that necessarily defeats the Club's claims.

**GOVERNOR'S CLUB, INC. v. GOVERNOR'S CLUB LTD. P'SHIP**

[152 N.C. App. 240 (2002)]

The majority's opinion concludes that the Club's complaint sufficiently pled a breach of fiduciary duty claim against Bradley and Proctor. The majority's opinion uses this conclusion to support its contention that the Club's complaint also sufficiently pled a constructive fraud claim against Bradley and Proctor without any analysis of constructive fraud. The majority's position on these claims constitutes an adoption of a *per se* rule against any individual who occupies a dual agency or fiduciary capacity and eviscerates well-established precedent discussed below.

The majority's opinion further states that "allegations sufficient to allege constructive fraud are likewise sufficient to allege unfair and deceptive trade practices."

I would hold the Club's complaint is insufficient to support a claim for breach of fiduciary duty. In the absence of any breach of fiduciary duty, there is no constructive fraud and no derivative claim for unfair and deceptive trade practices. Under these allegations there is also no independent basis for an unfair and deceptive trade practices claim.

## A.  Breach of Fiduciary Duty

The Club sufficiently alleged that Bradley and Proctor owed a fiduciary duty to the Club based on their status as owners, directors and officers of the Club. I disagree with the majority's conclusion that the Club's complaint "sufficiently stated a claim for breach of fiduciary duty against defendants Proctor and Bradley." The Club's complaint states that Bradley and Proctor "owed [the Club] a fiduciary duty always to act in good faith, openly, fairly, and honestly toward [the Club] . . . without taking advantage of [the Club]." The Club alleges no facts and circumstances to support its conclusory assertion that Bradley's and Proctor's "acts and omissions breached their fiduciary duty owed to [the Club]."

Directors "are liable for losses resulting from gross mismanagement and neglect of the affairs of the corporation. Good faith alone will not excuse them when there is lack of the proper care, attention, and circumspection in the affairs of the corporation which is exacted of them as trustees." *Anthony v. Jeffress*, 172 N.C. 378, 380, 90 S.E. 414, 415 (1916). Directors "are trustees and liable as such for losses attributable to their bad faith, misconduct or want of care. They are to direct and supervise the trust confided to them and are not mere figureheads." *Townsend v. Williams*, 117 N.C. 330, 336, 23 S.E. 461,

463 (1895). There is no allegation in the complaint that Bradley and Proctor acted in bad faith, engaged in gross mismanagement, or were neglectful in their service as directors of the Club. On the contrary, the exhibits attached to the complaint disclose that Bradley and Proctor acted in good faith, exercised their fiduciary duties with care, and fully disclosed all material facts to any prospective Club member prior to purchase.

The majority's opinion lists the following thirteen statements in support of its conclusion that the complaint states a claim:

1. The Developer and the Club were owned and controlled by, and were managed and operated by defendants Proctor and Bradley. Consequently, neither the Agreement nor the Amendment nor the representations and warranties in the Closing Certificate were the result of arm's length bargaining between independent parties;

2. the Agreement and the Amendment were in reality agreements by the Developer with itself;

3. the Developer purported to disclaim any fiduciary duty on behalf of the Club or its members;

4. the Club's Board of Directors, which took office at closing, was hand-picked by the Developer;

5. the independent legal counsel selected to represent the Club in the transaction was a long-time friend of defendant Bradley, and was selected by the Developer's hand-picked directors;

6. the provision allowing the Club's Board of Directors to select the Club's independent legal counsel was a sham;

7. the Developer constructed the Facilities with numerous defects, many of which were latent, not apparent or reasonably discoverable prior to closing, and were in fact not discovered by Club members until after closing;

8. the Club's Facilities were not properly constructed nor maintained prior to closing;

9. defendants knew or reasonably should have known of the Facilities' defects, and failed to disclose them to the Club or its members;

10. the presence of the defects was not known to or reasonably discoverable by the Club or its members;

11. defendants stood in a relationship of special faith, confidence, and trust with respect to plaintiff as the Club's officers and directors, and had exclusive control over the design, construction, operation and maintenance of the Facilities prior to closing;

12. defendants owed plaintiff a fiduciary duty and their acts and omissions breached said duty;

13. and as a result of said breach, plaintiff suffered damages.

Items one and two show that Bradley and Proctor were owners, directors, and officers of both corporations. The majority cites no authority for the proposition that individuals cannot simultaneously hold positions with different entities that engage in business transactions without breaching their fiduciary duties to either or both. Precedent is to the contrary. Allegations of dual-representation by themselves do not establish a breach of fiduciary duty. *Harrold v. Dowd*, 149 N.C. App. 777, 785, 561 S.E.2d 914, 920 (2002) (citing *Barger v. McCoy Hillard & Parks*, 346 N.C. 650, 667, 488 S.E.2d 215, 224 (1997)).

Bradley and Proctor originated, formed, and developed the Club. The majority's opinion offers no explanation how originators who seek to develop a golf course and club could develop it and not be subject to *post hoc* conclusory allegations of breach of fiduciary duty. The Agreement was drafted and executed in 1989. At that time, there were no members of the Club other than Bradley and Proctor available to sign the Agreement. The Club's complaint makes no allegation that Bradley and Proctor hid the agreement or failed to disclose its contents from anyone prior to joining the Club, or that anyone joined the Club without full disclosure of all material facts.

Statement three is used by the majority purportedly to show that by inserting a provision in the contract that limits Bradley's and Proctor's fiduciary duties toward the Club demonstrates that the Club properly alleged breach of fiduciary duty. The Agreement attached to the complaint contains the following provision.

No Fiduciary Duty. The parties agree that neither the Developer nor its employees, agents, officers and partners nor Club's incorporators or initial and interim Board of Directors and officers

designated by the Developer owe any fiduciary duty to investigate, negotiate or otherwise act on behalf of the members of the Club or the Club.

The Club argues that the "only conceivable basis for the dismissal [of the complaint by the trial court] arises from [the no fiduciary duty] provision of the contract." The majority's opinion does not address whether Bradley and Proctor could disclaim their fiduciary duty. Presuming that the contract clause is of no legal effect and that Bradley and Proctor owed a fiduciary duty toward the Club, the Club's complaint has not sufficiently alleged a breach of that duty, and the exhibits to the complaint disclose a set of facts that bars recovery. Alleging that a party inserted an exculpatory clause that purports to limit a legal duty into a contract is not sufficient to show a breach of that duty.

The complaint alleges that Bradley and Proctor "sought to insulate themselves from, and absolve themselves of, responsibility for any of their acts or omissions in connection with the Club Facilities, or any liability to the Members. They sought to do so principally by inserting numerous purported disclaimers and exonerations in the Agreement and the Amendment." Nothing in this assertion alleges that Bradley and Proctor did not "act in good faith, openly, fairly, and honestly toward [the Club] . . . without taking advantage of [the Club]." Seeking to limit liability in developing an expansive golf course residential community worth $7,230,000.00 over an eight year period does not in and of itself constitute a breach of fiduciary duty. Such waivers are enforceable in large scale development agreements and demonstrate nothing more than sound business planning for the originators of a large long-term project. These allegations only show that Bradley and Proctor sought to limit their liability to the extent legally possible, not that they breached any duty owed.

Items 4, 5, and 6 allege that the Club's board of directors were "hand-picked" by the Developer, and that legal counsel for the Club was a "long-time friend of Bradley" and "hand-picked" by the "hand-picked" directors. Again, these allegations show nothing more than the Club had a board of directors and legal counsel. Without more, these assertions do not allege a breach of a fiduciary duty or constructive fraud. Whether or not the Club's legal counsel was a friend of Bradley, he continued to owe the Club an independent duty under his oath to act in his client's, the Club's, best interest. No allegation in the complaint purports to show that the Club's attorney did not perform his duty.

Statements 7 through 11 attempt to show that Bradley and Proctor failed to disclose known latent defects about the Club's Facilities. These allegations are conclusory, and provide only cursory support for the majority's holding. Upon closer inspection, facts disclosed in the Club's exhibits attached to its complaint weaken this assertion, beyond recovery, to support a claim for breach of fiduciary duty.

The Club attached and incorporated into its complaint (1) the Agreement, (2) the Amendment, and (3) the Closing Certificate as exhibits. As noted above, attaching to and incorporating by reference these documents to the complaint made them part of the complaint for all purposes. N.C. Gen. Stat. § Rule 10(c).

The complaint states, the Amendment recites, and all parties admitted during oral argument, that the agreement as amended was approved by a majority vote of the Club's members. The Amendment specifically stated that the "parties believe that it is in the best interest of each party that the Agreement be amended to clarify certain matters . . ." and that the "amendments have been approved by a majority of the Members of the Club." The Amendment also "restated and incorporated the original Agreement in full to the extent it was not modified by the Amendment." It is undisputed that a majority vote by the Club's members approved the entire Agreement as amended.

The Club expressly acknowledged in the Amendment that it had "inspected all buildings, machinery, equipment, tools, furniture, improvements, and other assets" and acknowledged that all "are suitable for the purposes for which they are used and are in working condition . . . provided however that Developer agrees to repair or replace those items listed on the Disclosure Schedule."

The Closing Certificate reiterated that:

The Club has inspected all buildings, machinery equipment, tools, furniture, improvements, and other assets constituting a part to the Club Facilities and the Club acknowledges that they are suitable for the purposes for which they are used and are in working condition, reasonable wear and tear excepted, provided however that Developer agrees to repair or replace those items listed on the Disclosure Schedule.

The Club's complaint stated that this "inspection clause" was "the ultimate in self-serving statements" put into the Agreement by Bradley and Proctor. In its reply brief, the Club argues that the com-

plaint's language implies that "the Club was not afforded meaningful opportunity to inspect the Club Facilities, and that Bradley and Proctor caused the Club to make this statement to further their financial interests." Alleging that a statement was "the ultimate in self-serving statements" does not imply and is not equivalent to what the Club attempts to argue in its reply brief.

On a Rule 12(b)(6) motion to dismiss, we must assume that the facts disclosed in the Disclosure and the Closing Certificate are true. Alleging in the complaint that the Disclosure's and Closing Certificate's language is "self-serving" is not sufficient to imply any breach of any duty that Bradley and Proctor owed to the Club.

The Disclosure contained a detailed punch list of items to be repaired or replaced at Developer's expense. These items included numerous corrections to the (1) golf course, (2) club house, (3) maintenance areas, and (4) swim and fitness center. The Disclosure provided a remedy to the Club if the items were not properly and timely repaired and/or replaced.

> In the event the Developer has not begun the work or begun remedying the conditions listed above by July 31, 1997 . . . the Club at any time thereafter may provide the Developer 30 days prior written notice that it intends to exercise its right to take over and complete or remedy certain parts of the work or specific conditions at the Developer's expense if by December 31, 1997 such work or condition is not completed or remedied by Developer. If the Developer fails to complete the work by December 31, 1997 and the Club assumes completion of the work or remediation of a condition, the Club shall use commercially reasonable methods and competitive prices in undertaking and completing such work. Within 30 days after the Club completes the work, it shall provide the Developer with an accounting of and invoice for the charges, subject to any other information concerning the work reasonably requested by Developer, and Developer shall pay such invoice within 30 days thereafter.

This provision shows that the Club had arranged for the Facilities inspection, allowed for their necessary repairs, and provided for their completion. The Disclosure also provided a remedy to the Club if the items were not properly and timely repaired and/or replaced.

The Club's complaint does not allege nor does the Club argue here that the Developer did not repair or replace all items contained

in the Disclosure. All parties stipulated at argument that all items on the Disclosure were timely repaired and/or replaced. The complaint contains no allegation that the Club undertook additional repairs or corrections as provided in the remedy. There is *no allegation* that Bradley and Proctor used any undue influence, took advantage of the Club for their own benefit, restricted the Club's members from discovering any defects, or hindered their discovery in any way. The facts alleged in the complaint and disclosed in the exhibits show exactly the contrary.

The Club alleged in their complaint and argues here that more repairs and replacements were needed that were not discoverable prior to closing and were not listed in the Disclosure. They also contend that Bradley and Proctor knew of the defects and did not disclose them. Failure to disclose material facts between fiduciaries constitutes fraud. *See Vail v. Vail*, 233 N.C. 109, 114, 63 S.E.2d 202, 206 (1951).

The Club admits on appeal, and the majority holds, that the Club's claims for negligent and intentional misrepresentation against Bradley and Proctor were properly dismissed by the trial court. The Club also admits that the trial court properly dismissed all claims of fraud against Bradley and Proctor. Any attempt to bootstrap a dismissed allegation of failure to disclose known defects, after the Club admitted and the majority's opinion holds that they were properly dismissed, to support a claim for breach of fiduciary duty is without merit.

An examination of the non-disclosure allegations contained in the Club's complaint also demonstrates that the Club failed to sufficiently state a claim. The majority's opinion states that the clubhouse had a "woefully inadequate heating, ventilating and air conditioning system" ("HVAC") to support the proposition that Bradley and Proctor concealed non-discoverable defects. The only "latent defect" mentioned in the Club's complaint with respect to the club house is an HVAC "system that lacks sufficient capacity to heat and cool the club house properly." The club house was completed in 1993. The Club's members used the facility nearly four years prior to closing. Nothing is mentioned whatsoever in the Disclosure about the HVAC system and its inability to properly heat and cool in the numerous items to be repaired/replaced prior to closing.

Having had the opportunity to observe and use the HVAC system for nearly four years, and after having made no mention of any defi-

ciencies in the HVAC system in the Disclosure prior to approving and closing on the amended Agreement, it is incongruent for the Club to allege that the club house's HVAC's ability to heat and cool is a "latent defect" not reasonably discoverable.

Finally, concerning the "latent defects" allegedly known and concealed by Bradley and Proctor regarding the golf course, those conclusory allegations are also based upon a presumption of fraud and negligent misrepresentation. Again, the Club admitted and the majority opinion holds, that both of these claims were properly dismissed.

The golf course was completed in 1990, almost seven years prior to closing. The Club's members played the course the entire time. There is no allegation that Bradley and Proctor prevented any Club member from playing, inspecting, or from alleging the golf course was not of championship quality for those seven years prior to closing.

Item twelve states that Bradley's and Proctor's "acts" and "omissions" *breached* their fiduciary duties to the Club. The majority's opinion: (1) cites no fact, circumstance, act, or omission, individually or collectively, performed by Bradley and/or Proctor that constitutes a breach of their fiduciary duties owed toward the Club, (2) presumes fraud by virtue of concurrently acting as individuals and fiduciaries for two legal entities, and (3) assails the reputation of a licensed North Carolina attorney, solely because he was a "long-time" friend to one of the individual defendants. The majority's opinion presumes that the attorney would not honor his oath and duty. "Fraud is never presumed; and where it is alleged the facts sustaining it must be clearly made out." *Rice v. Metropolitan Life Ins. Co.*, 177 N.C. 128, 130, 98 S.E. 283, 284 (1919) (quotation omitted). Fraud must be specifically pled. N.C. Gen. Stat. § 1A-1. Rule 9(b) (2001). The Club failed to specifically allege any facts to make a showing of breach of fiduciary duty or fraud.

I would hold that the trial court properly dismissed the Club's claims for breach of fiduciary duty against Bradley and Proctor. Considering all of the facts and circumstances alleged as true and in the light most favorable to plaintiff, the facts disclosed in the complaint and exhibits insurmountably bar plaintiff's recovery on those claims.

## B. Constructive Fraud

The majority's opinion states that Bradley and Proctor owed the Club fiduciary duties because they were directors and officers of the

Club, which they created and started from its inception, as the Developers. Presuming this to be true, I do not agree that the Club pled sufficient allegations of facts and circumstances to show that Bradley and Proctor took advantage of, and wrongly benefitted from, their positions of trust to constitute constructive fraud.

The majority's opinion erroneously bootstraps the constructive fraud claim with the breach of fiduciary duty claim under the facts in this case. I separately analyze the Club's constructive fraud claim.

To survive a Rule 12(b)(6) motion to dismiss on constructive fraud, a plaintiff must "allege *facts and circumstances* (1) which created the relation of trust and confidence, and (2) [which] led up to and surrounded the consummation of the transaction in which defendant is alleged to have taken advantage of his position of trust to the hurt of plaintiff." *Terry v. Terry*, 302 N.C. 77, 83, 273 S.E.2d 674, 677 (1981) (quotation omitted) (emphasis supplied). While constructive fraud does not require the strict pleading requirements of actual fraud, *Patuxent Development Co. v. Bearden*, 227 N.C. 124, 128, 41 S.E.2d 85, 87 (1947) a plaintiff must allege some *facts and circumstances* leading toward the closing of the transaction in which defendant caused plaintiff damage by taking advantage of that position. Constructive fraud differs from actual fraud in that "it is based on a confidential relationship rather than a specific misrepresentation." *Terry*, 302 N.C. at 85, 273 S.E.2d at 678-79. "Implicit in the requirement that a defendant '[take] advantage of his position of trust to the hurt of plaintiff' is the notion that the defendant must seek his own advantage in the transaction; that is, the defendant must seek to benefit himself." *Barger*, 346 N.C. at 666, 488 S.E.2d at 224. "[I]n order for defendants to take advantage of plaintiffs, plaintiffs must be deceived." *Jay Group, Ltd. v. Glasgow*, 139 N.C. App. 595, 600, 534 S.E.2d 233, 236 (2000) (citing *Jordan v. Crew*, 125 N.C. App. 712, 720, 482 S.E.2d 735, 739, *disc. review denied*, 346 N.C. 279, 487 S.E.2d 548 (1997) (plaintiffs' constructive fraud claim was nonexistent because plaintiffs were never deceived by defendant, an essential element of both fraud and constructive fraud). The Club's complaint must allege facts and circumstances that show that the Developer sought to (1) take advantage of the Club, (2) wrongfully benefitted from the Club, and (3) deceive and, in fact, deceived the Club.

"The requirement of a benefit to defendants follows logically from the requirement that a defendant harm the plaintiff by taking advantage of their relationship of trust and confidence. Moreover, the requirement of a benefit to defendants is implicit throughout the

cases allowing constructive fraud claims." *Barger*, 346 N.C. at 667, 488 S.E.2d at 224-25 (fact that accountant and accounting firm obtained the benefit of their continued relationship with plaintiffs was insufficient to establish a claim for constructive fraud). "[I]t is not sufficient for plaintiff to allege merely that defendant had won his trust and confidence and occupied a position of dominant influence over him. Nor does it suffice for him to allege that the deed in question was obtained by fraud and undue influence." *Rhodes v. Jones*, 232 N.C. 547, 548-49, 61 S.E.2d 725, 726 (1950) (citing *Privette v. Morgan*, 227 N.C. 264, 41 S.E.2d 845 (1947); *Nash v. Elizabeth City Hosp. Co.*, 180 N.C. 59, 104 S.E. 33 (1920)). "Essential fullness of statement must not be sacrificed to conciseness." *Id.* at 549, 61 S.E.2d at 726 (citing *Hartsfield v. Bryan*, 177 N.C. 166, 98 S.E. 379 (1919)). *Compare Burgess v. First Union Nat'l Bank of North Carolina*, 150 N.C. App. 67, 73, 563 S.E.2d 14, 18 (2002) (quotation omitted) (citing *Terry*, 302 N.C. 77, 273 S.E.2d 674; *Barger*, 346 N.C. 650, 488 S.E.2d 215) ("This Court held that Loyd and Frank's Estate 'have proffered no evidence that First Union sought to benefit itself from its alleged fraud[,]' this being an essential element of both active and constructive fraud") *and Sharp v. Gailor*, 132 N.C. App. 213, 216, 510 S.E.2d 702, 704 (1999) (plaintiff came close to alleging constructive fraud, but was missing an allegation that Gailor took advantage of her position of trust for the purpose of benefitting herself, thus the acts alleged failed to state a claim for constructive fraud) *with Terry*, 302 N.C. at 84, 273 S.E.2d at 678 (held plaintiff's complaint sufficient to state claim for constructive fraud when defendant used position of trust and confidence to take advantage of his ill brother and purchase his business at a price below market value); *Link v. Link*, 278 N.C. 181, 193, 179 S.E.2d 697, 704 (1971) (defendant husband took advantage of relationship with wife to obtain shares of stock as part of a separation agreement); *and Vail v. Vail*, 233 N.C. 109, 115, 63 S.E.2d 202, 207 (1951) (defendant son took advantage of relationship of trust to obtain deed to property from his mother).

The majority's opinion lists thirteen assertions in the Club's complaint as sufficient allegations of *facts and circumstances* to constitute a breach of a fiduciary duty, constructive fraud, and unfair and deceptive trade practices. These statements are extensively analyzed above.

The majority's opinion does not show why these thirteen items, individually or collectively, are sufficient to withstand a Rule 12(b)(6) or Rule 12(c) motion to dismiss. The majority's opinion instead con-

siders the Club's reply to defendants' counter-claim to support its conclusion that Bradley and Proctor breached their fiduciary duties, constructively defrauded the Club, and engaged in unfair and deceptive trade. The majority's opinion attempts to buttress its conclusion with conclusory averments to negligent misrepresentation and intentional misrepresentation (fraud) that the Club concedes, and the majority's opinion holds, were properly dismissed.

These conclusory assertions from properly dismissed claims do not provide the facts and circumstances that are legally sufficient for the remainder of the Club's claims. Each assertion of the Club's complaint, either individually or collectively, fails to allege sufficient facts and circumstances to show that Bradley and Proctor took unfair advantage of the Club or attempted to secure an *improper* benefit for themselves by deceiving the Club or its members. The pleadings show that the Club's members (1) maintained complete, unrestricted access to all of the facilities, (2) played the golf course for seven years, (3) used the club house and all other facilities for four years, (4) had a board of directors, (5) had legal representation who owed an independent legal duty to represent the Club, (6) caused the Facilities to be inspected, (7) caused a repair or replace Disclosure "punch list" to be prepared, (8) caused all of the items on that Disclosure "punch list" to be repaired and or replaced, and (9) decided by majority vote to close on the transaction and accept the Facilities pursuant to the amended Agreement. Presuming all of the allegations in the Club's complaint as true, and viewing them in the light most favorable to the Club, none of those allegations show facts and circumstances that the Developers (1) took advantage of (2) improperly or illegitimately benefitted from their relationship of trust and confidence, or (3) deceived the Club or its members. The pleadings disclose a set of facts which bars recovery on constructive fraud.

### C. Unfair and Deceptive Trade Practices

The trial court properly dismissed the Club's unfair and deceptive trade practices claim against Bradley and Proctor. As briefly stated earlier, the majority's opinion based its decision on the presumption that the Club's complaint sufficiently pled constructive fraud. Since I would hold that the complaint insufficiently pled constructive fraud, there is no independent showing that Bradley and Proctor committed any unfair or deceptive trade practice.

"It is well recognized . . . that actions for unfair or deceptive trade practices are distinct from actions for breach of contract, and that a

mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under N.C.G.S. § 75-1.1." *Branch Banking and Trust Co. v. Thompson*, 107 N.C. App. 53, 62, 418 S.E.2d 694, 700, *disc. review denied*, 332 N.C. 482, 421 S.E.2d 350 (1992) (citations omitted). A plaintiff must show " 'substantial aggravating circumstances attending the breach to recover under the Act, which allows for treble damages.' " *Eastover Ridge, L.L.C. v. Metric Constructors, Inc.*, 139 N.C. App. 360, 368, 533 S.E.2d 827, 833 (2000) (quotation omitted). The Club has failed to allege any substantial aggravating circumstances attending any alleged breach by Bradley or Proctor to support any independent claim for unfair and deceptive trade practices. I would affirm that portion of the trial court's order dismissing this claim.

### III. The Club's Claims Against the Developers

### A. Breach of Contract

The trial court properly dismissed the Club's breach of contract claim against the Developer. There are no allegations in the complaint, considered *in pari materia* with the facts disclosed in the exhibits attached to the complaint, to support the majority's holding that the disclaimers contained in the Agreement "were obtained from the Club illegitimately." All of the exculpatory language was included in the 1989 Agreement prior to the date that any members, other than Bradley and Proctor, joined the Club.

The Club has not alleged, and the majority's opinion has not held, that the Agreement or Amendment are ambiguous. The Agreement contained the following provision:

The Club Acknowledges and agrees that except as expressly set forth herein the Developer makes no representations concerning the extent, design, location, size, date of completion or the manner of operation of the Club Facilities or other assets, or the materials, furniture or equipment which will be used in the Club Facilities.

The Club agrees that the Club Facilities and any other assets acquired pursuant to this Agreement are sold, purchased, and accepted "where is, as is," and without recourse. The Developer disclaims and makes no representations or warranties . . . , express or implied, by fact or law, with respect thereto, including, without limitation, . . . the condition, design, date of completion, construction, accuracy, or completeness of the Club Facilities or

other assets, and the future economic performance or operations of the Club Facilities or other assets, no claim shall be made by the Club relating to the condition, operation, use accuracy, or completeness of the Club Facilities or other assets or for incidental of [sic] consequential damages arising therefrom.

"Where the terms of the contract are not ambiguous, the express language of the contract controls in determining its meaning and not what either party thought the agreement to be." *Crockett v. Savings & Loan Assoc.*, 289 N.C. 620, 631, 224 S.E.2d 580, 588 (1976) (citations omitted). The Club made no allegation that the Agreement and the Amendment are ambiguous. "[I]t is the province of the Court to construe and not to make contracts for the parties." *Williamson v. Miller*, 231 N.C. 722, 727, 58 S.E.2d 743, 747 (1950) (citation omitted). The majority's opinion ostensibly rewrites the Agreement as amended. I would affirm the trial court's decision dismissing that portion of the complaint.

### B. Breach of Implied Warranty of Good Faith

I disagree with the majority's opinion when it states that the "complaint contained sufficient allegations to support [a breach of implied warranty of good faith] claim . . . ." For the reasons outlined above, the complaint, when considered along with the facts and circumstances contained in the exhibits, fails to allege that the Developer engaged in any conduct other than in good faith and with fair dealing. The Developer could have enforced the original Agreement as written, "where is, as is." Evidence of good faith is demonstrated by the Developer's agreement to provide for an Amendment, which detailed numerous items to be repaired/replaced by Developer and provided the Club a remedy if the Developer failed to repair/replace those items. I would uphold the trial court's dismissal of that part of the complaint.

### C. Unfair and Deceptive Trade Practices

The reasons stated above regarding defendants Bradley and Proctor are also applicable to the Club's claim against the Developer concerning unfair and deceptive trade practices. I would uphold the trial court's dismissal of that part of the complaint.

### IV. Summary

The exhibits to the complaint show that the majority of the Club's members voted to approve the Amendments, thereby approving the

original Agreement as restated therein, that included accepting the condition of all of the Facilities. The majority's opinion does not challenge or assail this fact.

The complaint also shows that the Club and its members used and inspected all of the Facilities, specifically listed various defects in the golf course, club house, maintenance areas, and swim and fitness center, and provided for their repair and/or replacement. The Club concedes in its brief that the trial court properly dismissed allegations of fraud or negligent misrepresentation against all defendants and does not argue that the Developer, Bradley, or Proctor (1) used fraud or strong arm tactics to dissuade inspection, or restricted the Club or its members' ability to inspect and discover any defect in any of the Facilities, or (2) procured any of the Club members' votes by fraud or deception. The Club was represented prior to closing by a board of directors and legal counsel, which could have prevented closing on the Agreement and exercised the "specific performance" clause in the Agreement to bring the Facilities up to proper standards prior to or after closing occurred.

## V. Conclusion

After careful review, I do not agree with the majority's opinion that the Club has sufficiently pled the elements of breach of fiduciary duty, constructive fraud, and unfair and deceptive trade practices claims against Bradley and Proctor and breach of contract, breach of implied warranty of good faith, and unfair and deceptive trade practices against the Developer: (1) The Club made no factual or circumstantial allegations sufficient to survive a Rule 12(b)(6) or 12(c) motion regarding the Club's claims against Bradley, Proctor or the Developer, and (2) all of the facts and circumstances in the complaint, and the exhibits attached thereto, when considered as true, disclose a set of facts that creates an insurmountable bar which necessarily defeats all of the Club's claims.

The majority's opinion appears to find that (1) a fiduciary duty exists, even though it was unambiguously disclaimed, (2) a duty was breached, merely by holding concurrent offices in related entities and having friendship with an attorney, (3) breach of fiduciary duty automatically alleged constructive fraud, even though a fraud claim is not properly alleged, and (4) constructive fraud necessarily resulted in a claim for unfair and deceptive trade practices, where no allegations support that claim.

**IN RE APPEAL OF THE MAHARISHI SPIRITUAL CTR. OF AM.**

[152 N.C. App. 269 (2002)]

The trial court properly held that these allegations were a house of cards that collapsed upon themselves. If any fiduciary duty was owed, and lawfully disclaimed, case dismissed. If a duty was owed and not disclaimed, but was not breached, case dismissed. If the contract was unambiguous and conveyed the Facilities "where is, as is," case dismissed.

I would affirm the trial court's order in its entirety. As to the portion of the majority's opinion that reverses the trial court, I respectfully dissent.